WALTER M. ELSWICK, Judge.
The claimant sustained personal injuries when he fell over an embankment at the approach of a bridge over Wheeling creek at Elm Grove in Ohio county, West Virginia, about 4 o’clock p. m., on Sunday the 20th day of August 1939. From his testimony it appears that he had left his home at about one o’clock on that afternoon and spent the time sitting around on the street watching boys, and people walking up and down the street until about four o’clock of that day. He then started to go across the bridge to visit relatives at Security, and upon approaching the bridge, an automobile drove near to him. He then stepped backward and fell through an opening between the bridge beam and an iron fencing over an embankment about twenty feet deep. He testified that in his opinion the automobile was traveling about 25 to 30 miles per hour. The road approached the bridge at an angle and Ait appears that this opening between the steel fence along the embankment and the bridge beam was at or near the apex of the angle.
*28 From the testimony of other witnesses it appears that this opening or space between the bridge and the metal fence was from 15 inches to 24 inches in width. It also appears that the rod connecting same had been broken for a week or longer prior to the time that claimant fell, but there was no evidence offered that its condition had been reported to the road commission, or was of such nature that its agents or employees should have known of its existence by the exercise of reasonable diligence. Claimant testified that he had frequently crossed the bridge and knew that automobiles frequently struck the metal railing and that it was thus frequently broken.
From the evidence it further appears that claimant was taken to the Wheeling hospital, where he remained for examination and treatment two days. An x-ray examination showed that there was a fracture involving the transverse processess of the fourth and fifth lumbar vertebrae on the left side. After leaving the hospital, claimant was confined to his bed for a period of about eight weeks. While in the hospital, he was* also treated for a small laceration of the skin on the scalp.
It appears that prior to the accident claimant had been employed as a coal loader by Valley Camp Coal Company, and received a separation notice from the coal company on November 20, 1939, showing that he was separated from employment on that date, the same stating that he was “laid off because no work was available.” Claimant then made application for and received unemployment compensation from the unemployment compensation commission of West Virginia for a period of 28 weeks. In his application to secure such compensation, claimant stated: “I am unemployed and have registered for work. I am able to work and available for work. I last worked on 11/20/39. My regular occupation is coal mining. I lost my job because of lack of work. I received no dismissal wages.”
Although the fall itself would indicate the possibility of some bodily injury by reason of the depth and abrupt decline *29 of the embankment, however, in order to establish a cause or reason for the claimant to have to lay straight on his back for a period of eight weeks as a result of his injury, it was necessary to supply medical testimony with reference to his examination and treatment at the Wheeling hospital on the evening of the injury. In the absence of the attending physicians who were in the armed services of our country at the time of the hearing it was stipulated and agreed by and between claimant, by counsel, and the attorney general for the state to submit as to the physical injuries of claimant the history and records from the Wheeling hospital. This history and record shows his systems review, as follows: “In the emergency room the patient was very confused and delirious. He was also intoxicated.”
The claimant testified that he had not been drinking any intoxicants on the day of his mishap. His brother-in-law also testified that he talked with him a few minutes before and did not observe any evidence of drinking. However, can we say that we are in better position to judge from this evidence under all the circumstances and evidence in the case that the claimant was sober, than his attending physician who examined and treated him in the emergency room of the hospital immediately or soon after he fell from the embankment? This accident happened in broad daylight and at a place where claimant knew that automobiles frequently swung around the curve or angle in the approach to the bridge. He knew that automobiles frequently broke the rod fastening the fence to the bridge. There was no evidence that the particular automobile was being driven in a reckless manner.
From all the evidence in the case, we are of the opinion that claimant could have avoided the accident with the exercise of due care for his own safety. The state is not an insurer, and the evidence fails to reveal that the claimant sustained his injuries by reason of the lack of due diligence on the part of the respondent, the state road commission. We, therefore, deny an award and an order will be entered accordingly.